Appellant. Mr. Miosi for the appellant, Mr. Murphy for the appellate. Mr. Miosi, good morning. Good morning. Can I ask you to begin with? We're so far from the coerced October 2, 2006, nine years now. Can you just bring us up to date who is representing whom? Sorry, who represents the supervisors today? The American Maritime Officers Union has represented the supervisors since October 1, 2011, and they currently represent the May it please the Court, my name is Bill Miosi. I represent the appellant, Liberty Maritime Corporation. This dispute between Liberty Maritime Corporation, which operates ocean-going vessels and international commerce under the U.S. flag, and the Marine Engineers Beneficial Association, which we all refer to as MEBA, a supervisors union that represented the U.S. supervisors aboard Liberty's vessels until September 30, 2011, when their collective bargaining agreement expired. Liberty then, as Judge Henderson just identified for me, entered into a collective bargaining agreement with a different supervisors union, the AMO. MEBA, the union, sued Liberty Maritime, seeking a declaratory judgment to reimpose the expired collective bargaining agreement, which thereby would oust the incumbent union and its members, and secondly, to compel Liberty Maritime to arbitrate agreements that we contend challenges an act that occurred after the collective bargaining agreement expired. The district court erred in three ways. All of them flow from the application of the wrong standard of review. The first two concern the subject matter jurisdiction. The case was presented to the district court on summary judgment, cross motions for summary judgment, and the Didn't he precisely follow the circuit's precedent on jurisdictional issues that we've held, that summary judgment motions that raise questions of jurisdiction should be treated as 12b1 motions? That's correct, Your Honor. That's what he's saying. And in those cases, we accept the facts as alleged in the complaint. It's true? That's not the way, with all due respect, Judge Tatel, that we read the court's precedent in Herbert v. National Academy of Science, as well as Phoenix Consulting v. The Republic of Angola, which provides that the court cannot assert subject matter jurisdiction. Have you read Kirkham, our decision in Kirkham? I'm sorry, Your Honor, I don't know that case. Defendants cannot challenge jurisdiction through summary judgment. Quote, summary judgment represents a decision on the merits, which courts can only render after jurisdiction has been established. Jurisdiction must be established under 12b1. That's correct, Your Honor, but my point is still that our reading of the court's precedent I just read you what our case law says. But when the facts are challenged, the court is obligated to resolve those factual challenges before determining their subject matter jurisdiction. There aren't any facts at issue. There are no facts at issue. We're trying to conjure up some, but there aren't. It's a stray facial claim. Whether the arbitration clause on its face is there, it's undisputed. The contract is there, it's undisputed. The stated expiration date is there, it's undisputed. And what you'd like to make of it is a very different matter. And isn't it also undisputed that supervisors are not covered by the NLRA? That is true, Your Honor. Okay, so then, to finish off Judge Edwards' question, it seems like an easy case. To answer your question, Judge Tatel and Judge Edwards, what's disputed is whether the parties were at impasse as of the date the contract expired, September 30, 2011. That's a question for the arbitrator. That's a question for the arbitrator. With due respect, Your Honor, not under Granite Rock. No, under National. Granite, respectfully, it's a grievance. It doesn't say anything that's inconsistent with the questions we're pressing. National Railroad squarely resolves it. This goes to the arbitrator. This is National Railroad. With due respect, Your Honor, I don't think it does because the court has to determine whether the contract that issued is viable at the time that the parties, that the district arose. No, the arbitrator decides whether the contract was viable. The only question is whether or not, when the expiration, whether it expired. That's all. That's a question for the arbitrator. That's what National Railroad says. My reading of this court's precedent on subject matter jurisdiction, then, Your Honor, with due respect, is different. I base it on the Phoenix Consulting and the Herbert v. National Academy of Sciences case, which requires or instructs the lower court to resolve factual disputes that concern the court's subject matter jurisdiction. National Railroad explains that there isn't a factual dispute if the arbitration clause is brought in. This is a 301 kind of case. We refer it back to the arbitrator. That's exactly what it is. Granite is talking about contract formation. This is not a contract formation case. And we've dealt with this, and we explained in National Railroad. We understand the irony of the conundrum or whatever, but we said here's the way you do it. There's a broad arbitration clause. You leave it to the arbitrator to decide the question. You're trying to make that the fact that's in dispute to get it to summary judgment isn't a fact in dispute. The court can look and see there's a broad arbitration clause. It's not disputed. Your Honor, I think the lower court is misplacing the presumption in favor or overemphasizing, I should say, the presumption in favor of arbitration before determining whether the contract was viable and was in existence as of the time the dispute arose. No, that's the dispute that goes to the arbitrator. The arbitration clause says, quote, all disputes relating to the interpretation or performance of this agreement shall be determined by the arbitrator. I can't imagine a broader arbitration clause than that. I'm not contesting the arbitration clause at all, Your Honor, or the breadth of it. That is not an argument that we've raised at any point. Oh, so? Our point is simply that the contract, our version, the facts we put into evidence, Your Honor, indicate that the contract was no longer viable as of the time the dispute arose. But you're saying you're going to win an arbitration. Pardon me? That's fine. All you just said was when we get to arbitration, we're going to win. If we get there. Well, then that's fine. If you're going to win, good for you. But that's not something we do. There's a strong presumption these cases go to arbitration, and this is a broad clause, and that's what National Railroad dealt with. And it's the law of the circuit. And it says when you find it, this is not contract formation. And they said, granted, it does not apply. And they said when we find this kind of case, it goes to arbitration. Then, if I may, Your Honor, address the other question regarding subject matter jurisdiction, and that deals with our argument under San Diego Building Trades versus Garmin, where based upon the evidence, testimony from the union's 30B6 witness, that a primary objective they have in this case is to oust the incumbent union and reassert their rights. Right, and they want to do it by enforcing their contract. That's what they want to do. That's why it's a 301 case. But with only— Because you agreed with me earlier that supervisors aren't covered by the Act, right? They are not covered by the Act. Okay, so as I think the board itself said when they rejected your unfair labor practice claim, yes, they do want their members employed as officers, but they're doing it by enforcing their contract. Well, I appreciate the opportunity that you bring up regarding the Division of Advice's memorandum. Regarding what? The Division of Advice memorandum that you just referenced. The Division of Advice only looks at the facial, the pleading, and applies the Bill Johnson's versus NLRB test. Whether the complaint had face value— If supervisors are not covered by the Act, how can this possibly implicate the Act, the NLRA? Because the company has rights under Section 8B1B to be free from coercion in the selection of its supervisors. Not if the supervisors aren't covered by the Act. But, Your Honor, I disagree with you that the Act—this is an unusual case where neither the employees that issue the supervisors nor the union that represents them have rights under the National Labor Relations Act. But the employer does under Section 8B1B, which I think is very clear. So a statute that says supervisors aren't defined, aren't—you agree that the Act says that employees—the word employee does not include supervisors. So an Act that excludes supervisors from coverage gives the employer rights regarding supervisors? Yes, it does, Your Honor. Is there a case that says that? I can't cite one standing here in front of you, but I can tell you the statute I would submit at face value is very clear that it provides an employer the protection from being coerced in the selection of its supervisors. Your protection is through your defense in the 301 action. That's where your right comes from. You have a right not to have a contract that's lapsed and forced against you. Which is true, which is one of the reasons—one of the arguments—the defenses, I should say, we put forward below, which we don't think was properly considered based upon the record that was on summary judgment. But I beg to differ that this is a highly unusual case, maybe the only one I've had in 30 years of practicing labor law, where I can say to a court, the employer is the party here with rights under the NLRA, and neither the employees— But you don't have a case for that, right? Because I don't know of one. I mean, if you do, that would be a different case, but I don't know of any case that so holds. And the reason—this is not a primarily representational issue, which we're looking for. This is not primarily representational, which is what you have to be able to show, and you can't. I agree with you. I'm here for the board with respect to a representational matter. I disagree with you, Your Honor. I know you're going to disagree, but that's not the point. There isn't, as you say, in your 30 years, your three decades of practicing, you have no authority to support your position. No, I didn't say that. Which is understandable. I know I'm recharacterizing. But there isn't any authority. This is not a representation question. It's a contract question. No, I understand, and obviously that's why they call it oral argument. But I appreciate the question, and Judge Tatel. No, standing here today, I don't have a case in front of me. I'll look at my brief. I actually looked in your brief to try to find the case, and I didn't see it. That's fine. I'm simply saying—I'll say it and then move on—that the statute is clear. And where the statute is clear, I think it speaks for itself that the employer here is free from being coerced. What provision of the statute do you rely on for that? Section 8B1B. Okay. Can I ask you about your position on impasse? Because your position is both that it expired on September 30th by virtue of the languages in the MOU, but that you reached impasse. There was no declaration of impasse, but that you reached impasse when? On the 27th or the 28th? I believe we reached it on the 27th. That's my view. But the union's publication, the Telex Times, which was issued to its members and whoever receives it, on September 30, 2011, stated what we contend is a correct state of affairs. The union rejected all of our demands. We were no longer able to agree. We were at loggerheads. The contract expired the same day. The durational language does contain reference to impasse. That's why we argue and we submit the evidence that we believe the parties were at a bargaining impasse and no longer able to agree, thus the expiration on September 30. We could not assert the contract expired September 27 because the durational clause carried out until the end of the month. That's when we declared our agreement was over and we moved on. So your position is that impasse occurred no later than the 30th or that it occurred earlier than that? I contend that it occurred on September 27. Even though from the timeline you get a call, you ask for the confirmation that they've done a reversal the next day and they give you that confirmation and tell you that they also want to negotiate on the 20 points, and you still say that the impasse occurred the day before when they said, it appears that Liberty and MEBA will not be able to agree to terms for a new agreement. That's correct because the subsequent events, the days immediately thereafter, we expressed our view in writing that we didn't believe the union's reversal. And we stated why. And we also stated that the union had told us with no ambiguity that they weren't going to agree with us on all the 20 points, which we had insisted on from the beginning of the party's bargain. We also advised the union that we would not enter into another extension of the agreement, which the parties had done the year before. In the absence of any evidence that MEBA was telling you, we've changed our mind, we'll cave on the defined contribution, any evidence that they were taped saying the opposite to someone else, why do you think that simply saying we don't believe you is enough to reach impasse? Because in considering impasse, it's important and necessary to review the party's bargaining history. So I don't suggest, and the evidence doesn't suggest that we just declared at a point in time November 27th, that's it, we're done. We had a period of weeks and written back and forth and exchanged proposals where we were spinning our wheels, according to our view of the facts, and finally the union told us we're not going to concede to this major point. At that point, the company was in the, the union also was soliciting support for a strike. And we were in the process of loading ships under U.S. government contract that had to have supervisors aboard for them to operate. Or they faced penalties under the failure to fulfill their contractual obligations. But it seems to me that there was this change in the union presidency and so forth. That was what, six or eight months before? Yes. And they were up until that point, MEBA was, saying we're not going to do it, we're not going to do it. And then they, I think they tell you, at least they argue this, that their members said, we want to keep our jobs. I mean, at the last minute when they said, we're not going to agree to this, and they said, and the members said, well, Liberty's looking for help from AMO and so forth, we want to keep our jobs. Why wouldn't it be completely natural for the union to call and say, we've got a, we've got a cave on this? And I mean, why would you not believe that? We didn't know all those private conversations between the union leadership and the supervisors that apparently occurred over the weekend before. But what we had was a track record that dated back more than a year where promises, in our view, promises and commitments were made and they weren't fulfilled. And we continued getting nowhere, if you will. We felt we couldn't take the risk of getting past October, excuse me, September 30, 2011, and having another, where these ships were then at sea, and having the union declare, and if you will, if I could use the terminology, they had us over a barrel at that point. We couldn't, and we told them we could no longer withstand the uncertainty of kicking the can down the road. We needed to solve these problems, which we'd worked on for more than a year, and the union, in our view, said no, no, no, no, kind of yes, but no on the 20 points. And we were literally, and I think it's a fair statement, we were out of time, given our obligations under contract. I think it would be different if those ships weren't laid up and they weren't going anywhere. But those weren't the facts. Okay, I just have one more question, and that is when you gave notice to terminate the agreement, you were acting under the provision to amend the agreement. There's no language separate that allows you to terminate. In other words, you were considering the amendment language to include terminating the agreement. Yes, yes. Thank you. We'll give you a couple of minutes in reply. Thank you. Mr. Murphy. Thank you, Judge Henderson. May it please the Court, my name is Mark Murphy here on behalf of the appellee, Meebo. Judge Henderson, you had asked initially about the facts of this case and where we're at. Just to supplement that a little bit, the arbitration has already occurred. It was a three-day arbitration over three months, starting in May, one day in May, two days in July. So that's been done. It's fully briefed. Briefs were submitted actually on September 30, 2015, exactly four years after this dispute started. Now, what I'd like to start with is just what Judge Edwards had been talking about. At bottom, this appeal presents the question of whether the district court correctly applied the underlying principles in favor of labor arbitration first recognized by the Supreme Court in the Steelworkers Trilogy and as well as subsequent guidance provided by the Supreme Court. This court and other appellate courts on the question of arbitrability of disputes under a labor contract. The union submits the district court decision ordering the parties to arbitration, and the reasoning relied on in reaching that decision was wholly consistent with both relevant Supreme Court precedent as well as precedent from this circuit and other appellate courts on the question of who shall interpret a contractual duration provision. Based on this relevant case law, the district court correctly ruled that the interpretation of the duration provision is for an arbitrator, not court. Here, there's a dispute, as Mr. Miasi discussed with Judge Henderson, the last few minutes of the presentation was really what happened at the arbitration. There is a dispute. The parties entered into a valid labor contract, and that contract contained a broad arbitration provision. That arbitration provision stated that all disputes relating to the interpretation and performance of this agreement shall be determined through arbitration. There's also a dispute, excuse me, that there's a duration clause in the contract, and that duration clause is conditioned. It's not a date certain. It doesn't say this contract expires September 30, 2011. What it says is it has that date, and then it suggests if either party seeks to amend, which the union did, the agreement goes forward, the terms and conditions of the agreement continue until one of two things happen. Either there's an agreement on the amendments to the agreement, or there's impasse. Here, the issue is whether or not the parties reached impasse. Now, this interplay between these two contractual issues, the duration and the arbitration clause, was exactly the issue that was presented to this court in National Railroad. In that opinion, this court confronted the same exact issue. The National Railroad decision first recognized the two underlying principles of arbitrability, and that's what the district court did here. First, National Railroad said arbitration is a matter of contract. You can't make a party submit to arbitration if they didn't agree to. But at the same time, this court also explained that if the parties have provided that a particular dispute should be settled by arbitration rather than litigation, then a court should not override that agreement. And then second, this court also recognized the Supreme Court precedent that unless parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator. So the question here and the question in National Railroad was, the question was did the parties agree to arbitrate disputes over contract expiration? That's the question. We submit that the district court got that exactly right following National Railroad, following the First Circuit precedent in Unite Here, following the Fourth Circuit precedent in Peabody, and following the subsequent decision that we submitted on the Ninth Circuit, the NSYNC decision. All those say when you have a dispute and there's nothing that carves out the duration provision, you look at the arbitration provision. If the arbitration provision is broad, then the parties intended for that dispute, the dispute, the question of whether the parties reached impasse, to be submitted to an arbitrator. Here, the arbitration provision in the contract is broad. It says all disputes. I don't think there could be a more broad recognition of that. Now, interestingly, Liberty in their briefs, they do not address directly. They don't address at all, actually. National Railroad, Peabody, or Unite Here from the First Circuit, what they do is they say this is a contract formation case. And as Judge Edwards recognized, that's not true. And this court in National Railroad specifically recognized there's a difference between contract formation and contract duration. Contract formation is when there's no contract, so you can't be sure that the parties agreed to arbitrate. Here, that's not the case. Liberty concedes there was a valid contract. Liberty concedes there was a valid arbitration clause, broad arbitration clause. Liberty concedes that the duration clause says what it says. What they don't agree on is the dispute as to whether or not we were at impasse. That is clearly for the arbitrator. And, in fact, that is exactly what issue was presented to the arbitrator. What did the arbitrator find about impasse? We have not received a decision from the arbitrator. The briefs were submitted on September 30th. We're expecting a decision by the end of November. Okay. Do you want to say anything about the jurisdictional issue? I think the district court got it exactly right. The district court looked at whether or not there was a contract dispute and followed exactly this court's guidance in National Railroad. And so the district court did have jurisdiction. With respect to the garment preemption argument, we've said this in our briefs, we've said this to the arbitrator, we've said this to the district court, and we'll say it again today. We're not interested in getting the jobs back. So there's no issue with respect to that. Does that make a difference to you? We don't think it makes a difference. Well, then why? Okay. So what's the point? What's the point? Just in case the court was curious. We like to be curious about things. Judge Edwards, then never mind. What do you want? I'm just curious. So it's not relevant, right? Even if you were seeking the jobs back, I assume your argument is, well, you're trying to enforce the contract, right? Right. So what is the objective? Well, what we asked the arbitrator to provide for us is if the contract is still in place, which we believe it is, he finds there was no impasse, then there are damages that flow to the bargaining unit and to the union for violations to the contract. We also sought and asked the arbitrator to provide for us a bargaining order because we never reached impasse. Wait, I thought you said you didn't want your jobs back. What are you going to do with the bargaining order? Well, the bargaining order, depending on what the arbitrator indicates in his relief, the bargaining order certainly would discuss the effects of Liberty's decision. This is an unusual case. I'll agree on one point with Mr. Nassi that it's gone on for so long. But so the arbitrator, we've asked him for monetary damage to address the damage that the members and the union have sought over these four years. I'm just curious. Excuse me? How much are you talking about? About $30 million. And we fully expect the arbitrator to address the impasse issue. It was briefed. And as we said, we don't think there's anything for this court to address, given the fact that the district court correctly ruled and followed National Railroad. Thank you. All right. Does Mr. Nassi have any time? Why don't you take a couple minutes? Thank you, Your Honor. I'll be very brief. I would be remiss if I didn't call to the court's attention at least what I think is important and was perceptive at the outside of the case, and that's Judge Sullivan's observation, that the issue of impasse was central. And while he was quite correct in denying our motion to dismiss because we needed or he observed there was a necessity to develop a fact record upon which he would then rule regarding jurisdiction as well as the merits, I think he was in his two sentences right on when he said it's about impasse. The court has to decide impasse as a threshold matter. It's not a question in this case for an arbitrator. Unless there are any questions, I thank you. All right. Thank you.
judges: Henderson, Tatel, Edwards